IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 05-170 (RJL) |
| | : | |
| CLIFTON RAY GORHAM | : | |

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR DEFENSE-REQUESTED LINE-UP

Defendant, Clifton Gorham, through undersigned counsel, respectfully submits the following supplemental information to this Court in support of his request that the Court order a line-up to be conducted prior to the trial for any government witnesses that have not previously identified Defendant in other identification procedures but whom the government intends to request that they attempt a courtroom identification of Defendant.

1. Defendant has requested information concerning the results of any identification procedures conducted with government witnesses to try and identify Defendant as the perpetrator of the charged offenses. On December 8, 2005, the Assistant United States Attorney assigned to the case, provided counsel with a letter that stated in pertinent part:

> There was no photo array or line-up procedure conducted in this case. There is one civilian witness who would testify that he saw your client throw the recovered handgun into the truck bed. He would also state that while he was still at the scene talking to the officers, he saw your client in police custody, and confirmed that your client was the man who threw the gun into the truck bed.

2. Defendant has moved this Court to order a line-up be conducted prior to the trial for any government witnesses that have not previously identified Defendant <u>in other identification procedures</u> but whom the government intends to request to attempt a courtroom identification of Defendant.[1] To the extent that the United States intends to elicit an in-court identification by the witness identified in paragraph 1, (hereinafter simply "Witness A"), Defendant requests that <u>such witness be included</u> in the pool of witnesses for which an out-of-court line-up should be conducted.

3. An identification made of a single suspect clearly in police custody is patently suggestive. As the Court of Appeals stated in Russell v. U.S. 408 F.2d 1280 (D.C. Cir. 1969):

> Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense. (footnote omitted)

4. The government apparently asserts that Witness A merely happened to see Defendant in custody and there was no intent on the part of the police to elicit such an identification. <u>To the extent that is true</u>, Defendant concedes that the identification is not subject to his motion to suppress identifications. *See, United States v. Conner*, 462 F.2d 296 (D.C. Cir. 1972) (Witness accidentally viewed defendant while down at police

---

[1] Defendant has also sought to suppress any identifications made as a result of suggestive identification procedures. At this point, it appears there may be no such identification procedures.

station to identify stolen credit card.) Conversely, if the evidence at trial shows that the police <u>did</u> intend to create a situation where Witness A could "identify" him, Defendant suggests that suppression would be appropriate; *see, United States v. Greene*, 429 F.2d 193 (D.C. Cir. 1972) (error to "arrange" meeting between defendant and witness.) If therefore, there was no formal identification procedure, Witness A would fit the definition of a witness who has not identified the Defendant in another identification <u>procedure</u>.

    4. Defendant acknowledges that should Witness A testify at trial, that his identification of Defendant at the scene would be admissible under Federal Rule of Evidence 801 (c)(1)(C). However, allowing an in-court identification changes the dynamics of that identification significantly. If Witness A makes no in-court identification, or fails to select Defendant at a line-up, then Defendant's argument to the jury that the prior identification was the product of the highly suggestive situation of seeing Defendant held in custody, gains great force. On the other hand, if Witness A makes an in-court identification, there is a much greater chance that the jury will credit the initial identification as well.

    5. For the reasons set forth in his initial Motion Defendant submits that there is a much greater likelihood that witness A will make an <u>accurate</u> decision about an identification of Defendant if it is attempted in the context of a non-suggestive line-up, instead of the courtroom setting, where Defendant would be seated alone with his

counsel at defense table.[2]

                                    Respectfully submitted

                                              /s/

                                    Richard K. Gilbert
                                    Bar. No. 939884
                                    601 Pennsylvania Avenue, N.W.
                                    Suite 900, South Building
                                    Washington, D.C.  20004
                                    (202) 898-0857

                                    Attorney for Defendant

---

[2] *See, United States v. Caldwell,* 465 F.2d 669 (D.C. Cir. 1972) and *United States v.* Smith, 473 F.2d 1148 (D.C. Cir. 1972)