UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Cr. No.  05-05-170 (RJL) |
| | : | |
| CLIFTON GORHAM, | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS TANGIBLE EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendant's Motion to Suppress Tangible Evidence.  In support of this Opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding these motions.

I.      Factual Background

1.  On April 19, 2005, at approximately 6:40 p.m., MPD Officer Dax Banks was in the vicinity of the west alley of the 1100 block of First Place N.W., Washington D.C., when he heard four loud blasts.  The officer proceeded northbound to the 1100 block of First Place N.W. to investigate. As he was approaching his destination, he saw several children running southbound screaming.  An unidentified female pointed toward M St. N.W. and yelled "He went that way on a bike."  After turning right onto M. St. N.W., Ofc. Banks observed a black male with a bald head and black shirt with blue jeans pedaling a bicycle towards the intersection of North Capitol and M St N.W.

2. Ofc. Banks immediately began driving towards the Defendant to make contact and investigate the blasts. The Defendant continued pedaling away from the officer, even though the officer directed the Defendant to stop. During this pursuit the Defendant lost control of the bicycle, dropped and abandoned it, and continued to flee on foot. The Defendant then ran across North Capitol Street. While running, the Defendant began holding his waist area as if he were trying to conceal or retain an object. The Defendant ran behind a large truck and removed and threw what the officer observed to be a black object into the truckbed.

3. The black object, which was recovered by police, was a Glock semiautomatic handgun loaded with eight rounds in the magazine and one in the chamber. Further, four shells casings were recovered by the police in the 1100 block of First Place N.W. These shell casings were later determined to have been fired and ejected from the Glock handgun recovered in the truck bed.

## II. The Officers Had Reasonable, Articulable Suspicion to Stop Defendant, and Probable Cause to Arrest Him.

Terry v. Ohio, 392 U.S. 1 (1968) permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v.

Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. United States v. Sokolow, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

In the instant case, Ofc. Banks heard four blasts, sees children running screaming from the area where he heard the blasts originate, is directed by a woman who yells that a male was leaving the scene on a bicycle, and then quickly comes upon someone (the Defendant) cycling away from the scene. The officer orders the Defendant to stop, and the Defendant continues to flee on the bicycle. The Defendant abandons his bicycle, runs across traffic, tosses a firearm into a truckbed and continues to flee. The police continue their pursuit, apprehend the Defendant, and recover the abandoned firearm, and four shell casings.

Defendant argues that the officers lacked probable cause to arrest him, and further, that any evidence seized as a result of this warrantless arrest must be suppressed as the fruits of an illegal search and seizure. "Probable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in

believing that the suspect has committed, is committing, or is about to commit an offense." United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002) (quotations and citations omitted). The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed. See Illinois v. Gates, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty we associate with formal trials[;] [i]t is enough that there was a fair probability").  If the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest. Chimel v. California, 395 U.S. 752, 763 (1969).

In the instant case, the Defendant was the individual who, while in the police officer's view, tried to rid himself of a firearm by discarding it in a public place.  At that moment, the police had probable cause to arrest him for Carrying a Pistol Without a License (CPWL).  Once probable cause had been established, the officers were able to search his person in a search incident to arrest, and any items recovered were thus not the fruits of an illegal search or seizure. As the firearm and shell casings were abandoned in a public area, and was not found on his person, this defense argument must fail.

**III.   Defendant Has No Standing to Challenge the Seizure of the Firearm and Shell Casings.**

Defendant lacks standing to challenge the seizure of the firearm and shell casings, because he had abandoned both the firearm and shell casings.  It should be noted that Defendant does not argue that he was forced to abandon either the firearm or the shell casings after a show of force.  Had he made such an argument, however, the Supreme Court's established precedent in

4

California v. Hodari D. would control this case. 499 U.S. 621, 623 (1991). In Hodari D., the officers, traveling in an unmarked police vehicle, but wearing clothing identifying themselves as police officers, came upon a group of youths in a high-crime area, who immediately started fleeing when they saw the unmarked police vehicle. 499 U.S. 621, 623 (1991). One of the officers pursued the defendant and ordered him to stop, an order which the defendant ignored. Instead, the defendant dropped what appeared to be a rock and continued to flee. Id. at 624. The officer tackled the defendant, and the rock was later discovered to be crack cocaine. Id. The Supreme Court held that the defendant was not seized until the officer tackled him, because despite the officer's attempt to assert his authority, when the defendant ignored it, he had not been seized for Fourth Amendment purposes. Id. at 626-27.

In the instant case, the Defendant fled the scene of the four blasts, before the police even approached him or asserted their authority. Four shell casings are located in that area. Further, he tossed the firearm into the back of a truckbed, and continued to flee. Consequently, because the Defendant was not seized until after he dropped the firearm; he abandoned the firearm and the shell casings, just as the defendant had done in Hodari D.

It is well established that the rights guaranteed by the Fourth Amendment are personal in nature. To assert these rights, a defendant must establish that he or she had a legitimate expectation of privacy in the place searched or a proprietary interest in the property seized. United States v. Salvucci, 448 U.S. 83 (1980). "When an individual abandons property," however, "he forfeits any reasonable expectation of privacy in it; consequently, police may search it without a warrant." United States v. Lewis, 921 F.2d 1294, 1302 (1990).

Because the Defendant in this case abandoned the firearm and shell casings before being seized, he forfeited any reasonable expectation of privacy in the property, and thus cannot challenge the seizure of either the firearm or the shell casings.

WHEREFORE, the Government respectfully requests that the Court deny the Defendant's motion to suppress tangible evidence.

        Respectfully submitted,
        KENNETH L. WAINSTEIN
        United States Attorney
        D.C. Bar Number 451058

BY: _____
        **CARLOS F. ACOSTA**
        **Special Assistant United States Attorney**
        **D.C. Bar Number 443373**
        **Organized Crime and Narcotics Section**
        **555 4th Street, N.W.  #4643**
        **Washington, DC 20001**
        **(202) 514-4922; Fax: (202) 353-9414**