IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 05-170 (RJL) |
| | : | |
| CLIFTON RAY GORHAM | : | |

DEFENDANT'S MOTION TO COMPEL PRODUCTION OF
DISCOVERY AND EXCULPATORY MATERIAL
AND FOR SANCTIONS FOR FAILURE TO COMPLY

Defendant, Clifton Gorham, through undersigned counsel, respectfully requests that this Court compel the United States to produce the following discovery and exculpatory material: (1) the clothing worn by Defendant at the time of his arrest, (2) the "arrest photograph" taken of Defendant as part of his processing after his arrest, (3) the "bench notes" and any photographs taken by the government's fingerprint and firearms examiners during their examination of the physical evidence in the case, (4) viewing letters to enable counsel for Defendant and the defense fingerprint and firearms experts to view the physical evidence, and (5) the identity of and contact information for the witness (or witnesses) who told the police that the shooter was wearing a ski mask. In addition, Defendant moves the Court for appropriate relief, up to dismissal of the indictment, for failure to comply with any such Order of the Court. As grounds therefore Defendant states the following:

I. BACKGROUND

1. On May 25, 2005, Defendant was arraigned on an indictment charging him with one count each of unlawful possession of a firearm and ammunition by a felon, in violation of 18 U. S. Code §922(g)(1), assault with a dangerous weapon, in violation of D.C. Code § 22-402, and possession of a firearm during a crime of violence, in violation of D.C. Code § 22-4504(b). The charges arise out of events occurring in the vicinity of the intersection of North Capitol Street and New York Avenue on April 19, 2005.

2. Defendant has filed evidentiary motions including a motion to suppress physical evidence, a motion to suppress identifications and a motion for a defense requested line-up. The United States has answered those motions and Defendant has filed replies to those oppositions. At a status hearing held on January 19, 2006, the Court scheduled an evidentiary hearing on the motions for March 1, 2006.

3. Pending a more complete exposition of the facts which should be forthcoming at the motion hearing, the facts in the case, from the perspective of the United States, may be summarized as follows. On April 19, 2005, Metropolitan Police Department (MPD) Officer Banks was patrolling in the Sursum Corda neighborhood, on First Place, N.W., near the intersection with "M" Street, N.W., when he heard what sounded like four gunshots coming from "M" Street. As he drove his cruiser towards the intersection, he saw several civilians running from the area. One civilian pointed to a man pedaling away from the scene on a bicycle. Officer Banks followed that person through the neighborhood, during which time the man fell off the bicycle and continued running. (The precise route taken by the man fleeing the scene and Officer

Banks is a matter of dispute.) Officer Banks claims to have seen the man reach into his waistband as he passed a truck stopped on North Capitol Street. Defendant was arrested at the intersection of North Capitol and "P" Streets, N.W.

    4. Another witness, to this point merely identified as "Witness A," claimed to have seen the person Officer Banks was pursuing throw a pistol into the back of the truck. When Defendant was brought back to the vicinity of the truck, Witness A identified him as the person he saw throw the pistol. (This is the identification at issue in Defendant's motion to suppress identifications.) There have been no identifications by any witness at the scene of the shooting of Defendant as the shooter, although the police did take a description from at least one witness.

    5. A 9mm pistol was recovered in the back of the truck. Four shell casings were recovered near the scene of the shooting. A report by a government fingerprint expert who examined these items was "negative;" however a report by the government's firearms expert has linked the four casings to the pistol recovered in the truck. (The Court has authorized Defendant to engage independent experts to evaluate these claims.)

II. THE DISCOVERY SOUGHT

    6. All of the items which Defendant seeks through this motion were requested in a letter sent to Ms. Rachel Lieber, Esq., the Assistant United States Attorney <u>currently</u> assigned to the case, on February 6, 2006. (During 2005, the Assistant United States Attorney assigned to the case was Mr. Carlos Acosta, Esq.) A copy of that letter

is attached as an Appendix to this motion. As of Tuesday, February 14, 2006, <u>counsel has received no reply from Ms. Lieber</u>. Four of the five items were specifically mentioned by counsel at the status hearing held on January 19, 2006, and most of them were also the subject of various earlier correspondence with Mr. Acosta. Therefore, Defendant certifies, he has attempted to informally obtain the requested discovery and exculpatory material.

   A. Defendant's Clothing

   7. Defendant's outer clothing was taken from him after his arrest. Defendant avers it was taken from him at the police station by a detective who asserted that it was being taken "as evidence." Counsel first requested to view the clothing in a letter to Mr. Acosta dated November 12, 2005. As of the status hearing held on January 19, 2006, the United States had not located the clothing. Ms. Lieber has not informed counsel whether the clothing has been located since that date.

   8. Certainly, the outer clothing worn by Defendant at the time of his arrest is crucial to evaluating whether Defendant matches the descriptions of the shooter. Moreover, even in instances where an "identification" was made (by Officer Banks and Witness A), a comparison of the clothing worn by Defendant and any description given by Officer Banks or Witness A may serve to undercut those identifications.

   B. The Arrest Photograph

   9. Defendant did not, prior to the January 19, 2006 status date, formally request a copy of the arrest photograph. Instead, Defendant sought to subpoena the photograph <u>directly</u> from the MPD. Counsel's investigator served such a subpoena

4

and upon following up on the matter was informed by the Office of General Counsel for MPD that all such requests had to go through the Office of the United States Attorney. Counsel's investigator was informed that the subpoena had been sent to the Assistant United States Attorney assigned to the case (presumably Mr. Acosta), but had not been sent back to them. Counsel for Defendant then raised the issue in open court at the January 19, 2006.

10. Like the Defendant's clothing, the arrest photograph, to the extent it shows what Defendant was wearing, may indicate whether Defendant matches the description of the shooter. Moreover, to the extent that the arrest photograph shows that Defendant's clothing was taken from him <u>prior</u> to the photograph being taken, it would corroborate Defendant's assertion that the clothing was taken by the police as "evidence," and not as a matter of routine in-processing at the Jail.

C. The Exculpatory Witness

11. In this case, the United States has contended, in pleadings files in this Court, that Officer Banks was chasing a man with a bald head. The government argues that this person was Defendant and that he was also the person who fired the shots at First and "M" Streets, N.W. The firearms evidence apparently establishes a link between the pistol recovered from the truck at North Capitol and "P" Streets and shooting.[1] However, Officer Banks never saw the person doing the shooting. Instead the police apparently interviewed at least one witness on the scene of the shooting. According to redacted police notes, that witness observed the shooter wearing a ski mask. (A copy

5

of those notes is attached as an appendix to this Motion.) The identifying information concerning the witness has been redacted in the copy given Defendant; thus, Defendant has no idea who this witness is, much less how to locate and interview him or her. The government admits that no ski mask was recovered from either Defendant or the route that Officer Banks apparently followed in chasing him. Thus, any witness who saw the shooter in a ski mask could be powerfully exculpating.

12. Defendant first raised this request at the January 19, 2006 status hearing and repeated the request in the February 6, 2006 letter to Ms. Lieber. As of this date, Ms. Lieber has not provided counsel with the identity and contact information for the witness, nor has she started that the government would call the witness at the motion hearing.

D. Expert Witness Notes And Photographs

13. On December 9, 2005, Mr. Acosta provided counsel with the reports of a fingerprint expert and a firearms expert referred to in Paragraph 5, *supra*. The government has <u>not</u>, however, provided Defendant with copies of any notes made by the experts while conducting their examinations, or any photographs which the experts may have taken as part of their examination. Although counsel did not mention this request to the Court at the January 19, 2006 status hearing, he requested the bench notes in letters to Mr. Acosta as early as September 14, 2005 and again on December 13, 2005. The request was also contained in counsel's February 6, 2006 letter to Ms. Lieber.

---

[1] The Court has granted the defense the opportunity to independently evaluate this forensic evidence.

6

E. Viewing Letters

14. Mr. Acosta did previously provide counsel for Defendant with a viewing letter that would have permitted counsel and his <u>investigator</u> with the opportunity to view the pistol and ammunition evidence at the MPD Property Warehouse. However, once the Court approved Defendant's requests for independent fingerprint and firearms experts, counsel requested that the viewing letters be reissued to permit counsel and the <u>fingerprint examiner</u> to view the evidence at the warehouse and for the firearms examiner to subsequently view the evidence at the MPD firearms examination section.[2] Counsel first made this request in the December 13, 2005 letter to Mr. Acosta, as well as at the January 19, 2006 status hearing and in the February 6, 2006 letter to Ms. Lieber. To date he has not received the requested viewing letters; thus, no examinations have been scheduled.

III. APPROPRIATE RELIEF

A. Timing

15. Clearly, the most appropriate relief would be for the United States to promptly and voluntarily turn over the requested materials to defense counsel. Even if that were the case, however, Defendant may still need to request a continuance in the motion hearing. When the Court set the date for the motion hearing, it had dates available in February. The Court granted counsel for Defendant's request for a date in

---

[2] The defense firearms examiner needs the use of a comparison microscope to examine the evidence. Although he has such equipment in his office in Maryland, traditionally he has conducted the examinations in the MPD firearms section in order to use their comparison microscope. In that way, the control of the evidence never leaves the MPD. Defendant has no objection to this procedure.

March specifically because of the unusual combination of obligations arising at the end of February.[3] Those obligations still exist. That is precisely why counsel, in his letter of February 6, 2006, requested that the United States provide discovery by Monday, February 13, 2006.

16. Defendant acknowledges that the matters involving the expert witnesses will not affect the scheduled motion hearing as they would not affect the legal issues presented by the motions. Defendant's clothing and arrest photograph, on the other hand, may figure prominently in the issues as to whether there was probable cause to arrest Defendant and whether any identification is "reliable." The most critical information, however, may well prove to be the identity, and subsequent testimony, of the witness who claimed the shooter was wearing a ski mask. If the United States is not willing to produce that witness for the motion hearing, Defendant might require a continuance to locate and procure the witness himself.

B. Dismissal Of The Indictment

17. It may be that the United States will claim that Defendant's clothing is no longer available. If so, and depending upon what, if any, explanation the United States provides, the Court may need to determine whether such "loss" was the product of

---

[3] Counsel has an out of town trip to Massachusetts on February 16 through 18, to meet with a client in federal prison there. On Tuesday, February 21, 2006, counsel has a petition for writ of certiorari due in the United States Supreme Court. The same day, a trial is scheduled to begin in federal court in a case in which counsel has been appointed to represent a detained, juvenile, material witness. On Monday, February, 27, 2006 counsel has due briefs in both the District of Columbia Court of Appeals (for the client in Massachusetts) and the United States Court of Appeals for the District of Columbia Circuit. He also has scheduled an oral argument in another case before the Circuit Court. With the exception of the business trip to Massachusetts, the scheduling of these different matters before these different courts was not a matter of counsel's choosing.

"bad faith" on the part of the government. *See, Youngblood v. Arizona*, 488 U.S. 51 (1995). While it may be premature to conclude that the clothing is lost, much less whether bad faith was involved, the fact remains that the police did seize the clothing as "evidence," and, unlike the biological evidence in *Youngblood*, the exculpatory value to the defense would have been immediately apparent to the police had it contrasted with the descriptions given by Officer Banks and Witness A.[4]

Wherefore for the above reasons, as well as those set forth in the attached Memorandum of Points and Authorities, Defendant respectfully requests that this Court compel the United States to produce the following discovery and exculpatory materials: (1) the clothing worn by Defendant at the time of his arrest, (2) the "arrest photograph" taken of Defendant as part of his processing after his arrest, (3) the "bench notes" and any photographs taken by the government's fingerprint and firearms examiners during their examination of the physical evidence in the case, (4) viewing letters to enable counsel for Defendant and the defense fingerprint and firearms experts to view the physical evidence, and (5) the identity of and contact information for the witness (or witnesses) who told the police that the shooter was wearing a ski mask. In addition, Defendant moves the Court for appropriate relief, up to dismissal of the indictment, for failure to comply with any such Order of the Court.

---

[4] If the clothing is lost and the Court does not find bad faith, it may still impose other sanctions. Defendant reserves the right to suggest what those sanctions might be after the Court makes the required evidentiary findings.

        Respectfully submitted

           /s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 05-170 (RJL) |
| | : | |
| CLIFTON RAY GORHAM | : | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL PRODUCTION OF
DISCOVERY AND EXCULPATORY MATERIAL
AND FOR SANCTIONS FOR FAILURE TO COMPLY

I. RULE 16 DISCOVERY

    A. Tangible Evidence

    1. Federal Rule of Criminal Procedure Rule 16 (a)(1)(C) requires the prosecutor to permit defense counsel, upon request, to examine tangible evidence and documents within the possession, custody or control of the government which is material to the preparation of the defendant's defense or intended for use as evidence in the government's case in chief. Because the description of the person allegedly firing the pistol is a critical fact in the case, this paragraph would seem to squarely cover the firearms evidence recovered at the scene, the clothing seized from Defendant at the time of his arrest and the photograph of him taken as part of his processing by the police after his arrest.

    B. Viewing Letters

    2. In order to maintain proper custody and availability of the physical evidence, the United States and the Metropolitan Police Department (MPD) have generally required counsel to examine the evidence at MPD facilities. Defendant has no

objection to this requirement in the context of this case, but manifestly, if the police require authorization of the Office of the United States Attorney for defense counsel and experts to enter those facilities to examine evidence, the United States cannot prevent such examination by the refusal to provide the defense with such authorization.

      C. Government Expert Witness Notes

      3. Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure provides:

> **(G) Expert witnesses.** At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. ... The summary provided under this subparagraph <u>must describe the witness's opinions, the bases and reasons for those opinions,</u> and the witness's qualifications. (emphasis added)

      4. Defendant has <u>not</u> required the United States to provide a detailed summary <u>if, but only if</u>, the United States provides counsel not only with the basic reports by its experts, which only state the final opinions, but also the contemporaneous notes ("bench notes") of their experts as well as any photographs taken at the time of their examination. In the context of this case, such information is sufficient to allow the defense experts to evaluate the conclusions of the government's experts. To this point however, the United States has failed to provide even those notes (and photographs.)

II. EXCULPATORY MATERIALS

      5. The government violates a defendant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when it deprives a defendant of material, exculpatory

evidence in its possession; the question of the government's good faith or bad faith is not relevant, *see, Strickler v. Greene*, 527 U.S. 263 (1999); *Kyles v. Whitley*, 514 U.S. 419 (1995). In this case, the United States has contended, in pleadings files in this Court, that Officer Banks was chasing a man with a bald head, but he never saw the person doing the shooting. According to redacted police notes, at least one witness on the scene of the shooting observed the shooter wearing a ski mask. Since no ski mask was recovered from either Defendant or the route that Officer Banks apparently followed in chasing him, this witness is a potentially exculpating one.

III. SANCTIONS

    A. Dismissal Of The Indictment

    6. Since Defendant cannot <u>show</u> the Court the clothing, he acknowledges that the evidence at this point can be presumed to be only "potentially" exculpatory. In order to show a due process violation from the loss of potentially exculpatory evidence, a defendant must show that the government acted in "bad faith," *Arizona v. Youngblood, supra. Accord, In re Sealed Case*, 99 F.3d 1175 (D.C. Cir. 1997).

    7. Obviously, at this point, Defendant knows little about what happened to the clothing. Such information is in the hands of the government. Since the exculpatory or incriminating nature of the evidence would have been immediately obvious to the police (it either matched the descriptions or it did not), there are at least significant questions as to the good faith basis for any loss of the evidence. If the clothing is lost,

Defendant asks that the Court order a hearing on the matter.[5] Further arguments can be developed based upon the facts elicited at the hearing.

      8. If there has been a violation of Defendant's Fifth Amendment due process rights, he submits the proper remedy is dismissal. *See, United States v. Bohl*, 25 F.3d 904 (10th Cir. 1994); *People v. Newberry*, 652 N.E.2d 288 (Ill. 1995). Even if the Court were to find no due process violation, the government obviously violated Federal Rule of Criminal Procedure 16, if it disposed of evidence which the defense expressly requested to examine. The Court is within its authority to impose lesser sanctions for violation of a discovery rule. *See, Taylor v. Illinois*, 484 U.S. 400 (1988) (exclusion of defense witness for violation of discovery rule not a violation of Sixth Amendment compulsory process clause); *United States v. Katz*, 178 F.3d 368 (5th Cir. 1999) (exclusion of evidence sanction for discovery violation.)

                                                                                                  Respectfully submitted

                                                                                                  /s/

                                        Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857

Attorney for Defendant

---

[5] Certainly any "loss" of the clothing would not be in the "normal" course of business. Generally there is a duty on the part of law enforcement to preserve evidence, *United States v. Bryant*, 439 F.2d 642 (D.C. Cir. 1971). Although the legal analysis of *Bryant* has been superseded by the *Youngblood* analysis, *United States v. McKie*, 951 F.2d 399 (D.C. Cir. 1991), this Circuit has never repudiated the government's continuing obligation to preserve evidence.