UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 05-170 (RJL)** |
| | : | |
| V. | : | |
| | : | |
| **CLIFTON RAY GORHAM,** | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM FOR REMOVAL OF THE DEFENDANT FROM THE TRIAL PROCEEDING

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum for removal of the defendant from the court proceedings to prevent the defendant's continued disruptive behavior.

**I.      FACTUAL BACKGROUND**

1.   On April 19, 2005, at approximately 6:40 p.m., MPD Officer Dax Banks was in the vicinity of the west alley of the 1100 block of First Place N.W., Washington D.C., when he heard four loud blasts.  The officer proceeded northbound to the 1100 block of First Place N.W. to investigate. As he was approaching his destination, he saw several children running southbound screaming.  An unidentified female pointed toward M St. N.W. and yelled, "He went that way on a bike."  After turning right onto M. St. N.W., Ofc. Banks observed a black male with a bald head and black shirt with blue jeans pedaling a bicycle towards the intersection of North Capitol and M St N.W.

2.   Ofc. Banks immediately began driving towards the defendant to make contact and investigate the blasts.  The defendant continued pedaling away from the officer, even though the officer directed the defendant to stop.  During this pursuit the defendant lost control of the bicycle,

dropped and abandoned it, and continued to flee on foot. The defendant then ran across North Capitol Street. While running, the defendant began holding his waist area as if he were trying to conceal or retain an object. The defendant ran behind a large truck and removed and threw what the officer observed to be a black object into the truck bed. In addition, a civilian witness who was stopped at the traffic light observed the defendant throw a black handgun into the truck bed.

3. The black object, which was recovered by police, was a Glock semi-automatic handgun loaded with eight rounds in the magazine and one in the chamber. Further, four shells casings were recovered by the police in the 1100 block of First Place N.W. These shell casings were later determined to have been fired and ejected from the Glock handgun recovered in the truck bed.

4. The defendant is now being detained in D.C. Jail. He was previously housed in a restricted mental health unit at Federal Medical Center (FMC) in Butner, North Carolina, after being admitted on or about June 16, 2006. Over the course of three months, the defendant underwent professional evaluation by a psychologist and psychiatrist who diagnosed him as incompetent to stand trial. However, on a second Court ordered evaluation on or about April 2008, at the Federal Medical Center (FMC) in Butner, North Carolina, the doctors determined that the defendant was competent to stand trial. In fact, they further diagnosed the defendant with Malingering. Consequently, the defendant was sent back to this Court for further proceeding. Despite the Court's finding, the defendant continues to engage in disruptive behavior that prevents the current court proceedings to continue in an orderly manner and the defendant does not act in a responsible fashion while in the courtroom, nor does defendant's current conduct allow for the orderly administration of justice to proceed.

II.   **STATEMENT OF FACTS**

Based on the finding filed with the Court from the doctors at Federal Medical Center (FMC) in Butner, North Carolina, dated April 4, 2008, the Court has attempted to schedule several status and motions hearings in this matter. However, the defendant has on each occasion yelled, screamed, made loud noises, and maintained a constant disruptive conduct and behavior while in the back courtroom lockup facilities and while he was present in the courtroom. Indeed, the defendant is not attentive to the Court proceeding but rather chooses to focus his attention elsewhere by moving his chair and screaming. These distracting actions and movements by the defendant necessitates the presence of a United States Marshal to now stand immediately behind the defendant. The U.S. Marshal has to now hold the back of the defendant's clothing in order to prevent the defendant from making any sudden movement while he is in the courtroom.

Moreover, the defendant also engages in yelling while in the courtroom. The defendant periodically engages in high-pitched yelling and moaning. The defendant accompanies this yelling with extremely loud phrases such as, "Don't kill me" and "Don't strangle me." The defendant's constant and deliberate outbursts interferes with counsel statements to the Court. The voices of counsel are sometimes inaudible to the Court because of the defendant's disruptions. Specifically, one occasion the defendant brought into the courtroom feces in his hand which caused the U.S. Marshal to tackle the defendant to the ground so that the defendant could not throw the feces in the courtroom at the Court, courtroom staff, or counsel. Consequently, the defendant's actions has caused the U.S. Marshal to call for additional assistance to aid with the dangerous and disruptive actions of the defendant. Finally, at the last status hearing in this matter, the defendant was not able

to be brought out into the courtroom because the defendant was yelling so loudly that he could be heard in other courtrooms and throughout the hallways, and after several minutes the U.S. Marshals were forced to take the defendant away from the courtroom and back down stairs to the holding area.

### III.   LEGAL ANALYSIS

A defendant can lose his right to be present at trial if, after being warned by the judge that he will be removed if he continues his disruptive behavior, the defendant nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Illinois v. Allen, 397 U.S. 337 (1970). Indeed, due process does not require the presence of the defendant Gorham if his presence means that there will be no orderly process at all. The Confrontation Clause of the Sixth Amendment to the United States Constitution grants a defendant in a criminal trial the right to be "confronted with the witnesses against him." U.S. CONST. amend. VI. This right gives the accused a "right to be present in the courtroom at every stage of the trial." Id. at 337. However, the Supreme Court has held that the right granted by the Sixth Amendment is not an absolute right. Id. at 342. This right can be waived by the defendant through misconduct during the court proceeding. Synder v. Massachusetts, 291 U.S. 97 (1933). In fact, a defendant can waive their right to be present at trial if, after being warned by the judge that persisting in disruptive behavior will result in his removal from the court, the defendant persists and the misconduct prevents the trial from continuing in an orderly manner. Allen, 397 U.S. at 343.

However, removing an unruly defendant from the courtroom is only one option available to the Court. The Court also has the option to allow the defendant to remain in the courtroom while bound and gagged in order to prevent further disruption. Id. In addition, citing the defendant for

contempt is another means for the court to compel a defendant to cease disrespectful behavior. Id. Fundamentally, the Court using its own discretion may employ any of the three above - mentioned constitutionally permissible methods to address the problem of a boisterous and disruptive defendant. Id.

The Court must indulge every reasonable presumption against the loss of constitutional rights. Id. at 342. However, both binding and gagging or citing defendant Gorham with contempt are unreasonable in light of the circumstances as neither of these options will restore order to the Court without prejudice. Indeed, from all indications from the defendant's past actions it appears that the Court should consider first warning the defendant to cease and desist and if the defendant does not adhere to the Court directive, then the Court should expel the defendant from the proceeding which is the only option that will restore order without prejudice to the parties.

Binding and gagging defendant Gorham would prohibit Gorham from interrupting the trial proceedings while simultaneously prejudicing the jury. As the court noted in Allen, "even to contemplate such a technique, much less to see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Id. at 344. If the Court, after warning, bound and gagged defendant Gorham as a last resort, this action may severely prejudice the jury. Id. "Not only is it possible that the sight of the shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of the judicial proceedings that the judge is seeking to uphold." Id.

Moreover, employing such a technique would not completely disable the defendant from making inappropriate noises which would be distracting to the jurors. Not surprisingly, it is possible that being bound and gagged would only further add to defendant Gorham's courtroom misconduct.

5

Because a gag cannot entirely silence someone's voice, defendant Gorham may continue making audible noises. Furthermore, defendant Gorham's disruptive movement, though severely limited, may also continue though he is bound.

Lastly, even though binding and gagging the defendant is an attempt to respect the defendant's Sixth Amendment right to be present at trial while simultaneously restraining the defendant, this method is problematic. A bound and gagged defendant is no longer able to effectively communicate with his lawyer; communicating with a lawyer is one of the essential reasons for allowing a defendant to be present at trial. Id. Though defendant Gorham has voluntarily refused to communicate with his lawyer, binding and gagging him is still an undesirable option because of the potential risk of prejudice to both the government and the defendant.

Lastly, citing defendant Gorham with contempt is also an unsatisfactory option. Defendant Gorham is a competent individual who is purposefully disrupting the Court proceedings. Gorham's lack of respect for the Court is evident through his actions and consequently a citation for contempt would be mainly symbolic. As the court noted in Allen, "if the defendant is determined to prevent any trial, then a court in attempting to try the defendant for contempt is still confronted with the identical dilemma." Id. at 345. The court also acknowledged that citing a defendant who is facing a severe sentence with criminal contempt may not be effective to deter the defendant's conduct. Id. In this case, the government asserts that the defendant would be unmoved by a contempt sentence in light of the more serious sentence that he may face. Given defendant Gorham's determination to disrupt the trial and his prior criminal history combined with the seriousness of the current offense, it is unlikely that a citation for criminal contempt would persuade the defendant to discontinue his misconduct.

Therefore, removing the defendant from the proceeding is the only reasonable method to prohibit the defendant from disrupting the proceeding any further. Before removal however, defendant Gorham must be warned by the Court that his continued disruptive behavior will result in his waiver of his right to be present at trial. Id. at 343. After the warning, if the behavior continues, the [Court] can expel the defendant. Id. If after expulsion, defendant Gorham agrees to conduct himself in respectful manner, then the defendant's right to be present at trial can be reclaimed. Id. Respectfully, based on the defendant own actions in this case and the numerous disruptive episodes, it is the position of the government that in order to maintain the proper level of respect necessary for the court proceeding, the Court should remove the defendant from the court proceeding after the defendant has been duly warned.

## CONCLUSION

WHEREFORE, for the reasons stated above, the United States respectfully submits this Memorandum for Removal The Defendant From The Trial Proceeding to prevent further disruption of the proceeding by expelling defendant Gorham from the Court proceedings due to his intentional waiver of his Sixth Amendment right to be present at trial through his constant misconduct.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY

By: _____
    EMORY V. COLE
    Assistant United States Attorney
    555 4th Street, NW #4213
    Washington, D.C. 20530
    (202)616-3388
    Emory.Cole@usdoj.gov